UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN A MCINTOSH,

                Plaintiff,

- vs -                                            DECISION AND ORDER
                                                                        15-CV-6209 CJS

BING REAVES JR., *et al.*,

                Defendants.

---

## INTRODUCTION

**Siragusa, J.** Plaintiff John A. McIntosh ("McIntosh") filed a Civil Rights Act complaint on April 10, 2015, ECF No. 1, alleging that individual members of the County of Monroe government ("County") and City of Rochester government ("City") violated his right to be free from assault, battery, harassment, intimidation, false arrest, robbery, libel, obstruction of justice, threats, torture, and violated his right to privacy, et cetera. The Court dismissed many of his claims after an initial screening and now both sets of defendants have brought motions asking the Court to dismiss all of McIntosh's remaining claims. After review of the papers, the Court grants in part the Monroe County Defendants' application for summary judgment, ECF No. 21. All claims against Deputy Schultz, named in the complaint as John Doe 1 "big, bald jailor," are dismissed. All claims against Deputy Kenney, with the exception of the claim that the deputy tried to break McIntosh's wrist, are also dismissed. The Clerk will enter a partial judgment for Defendants as outlined above. Further, the City Defendants' motion for summary judgment, ECF No. 22, is granted in total. All claims against the City Defendants are dismissed.

**STANDARDS OF LAW**

*Summary Judgment*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, … demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Since Plaintiff is proceeding pro

se, the Court has construed his submissions liberally "to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)

### *Irby Notice*

Pursuant to Western District of New York Local rule 56(b), both the County and the City defendants provided notice to Plaintiff in accordance with the Second Circuit's requirement set out in *Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001). The notice provided with the moving papers stated as follows:

Revised 05/01 WDNY

# IMPORTANT NOTICE TO PRO SE LITIGANTS

## RULE 56 MOTIONS FOR SUMMARY JUDGMENT

This Notice is to advise you that a party in your lawsuit has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which means that summary judgment will be granted if the Court finds that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## Failure to Respond to This Motion for Summary Judgment May Result in The Grant of Judgment in Favor of The Party Seeking Summary Judgment and The Dismissal of All or Part of The Case.

### Opposing Affidavits and Exhibits

Therefore, if the motion seeks summary judgment against you, you **MUST** submit opposing papers in the form of one or more affidavits (or affirmations) made upon the personal knowledge of the person signing each affidavit. Each affidavit must set forth admissible facts and must show that the person submitting that affidavit is competent to testify as to the matters stated therein (because he or she has personal knowledge of the facts set forth in the affidavit). If you wish to submit exhibits in opposition to the motion, you may attach to the affidavit (or submit separately) sworn or certified copies or all papers or parts thereof which are referred to in an affidavit.

### Statement of Material Facts Requiring a Trial

You **MUST** also submit a <u>separate</u>, short, and concise statement of the material facts as to which you

contend there exists a genuine issue which must be tried. *See* Rule 56 of the Local Rules of Civil Procedure (available on the Western District web site at www.nywd.uscourts.gov). **Note** that all of the material facts which have been set forth in the statement served on you by the moving party (which that party claims are material facts about which there is <u>no</u> genuine issue to be tried) <u>will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue requiring a trial</u>.

### **Memorandum of Law**

You **MUST** also submit a <u>separate</u> answering memorandum of law, Local Rule 7.1(e), which may not exceed 25 pages in length without prior approval of the Court, Local Rule 7.1(f). Failure to comply may result in the motion being decided against the non-complying party.

W.D.N.Y. Notice to Pro Se Litigants.

### *Section 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### *Personal Involvement*

A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir. 1998).

> A defendant may be "personally involved" in causing a constitutional deprivation if: (1) defendant participated directly in the alleged infraction; or (2) acting in a supervisory capacity, defendant (a) failed to remedy a continuing or egregious wrong after learning of a violation, (b) created a policy or custom under which the unconstitutional practices occurred or allowed such policy or custom to continue, or (c) was "grossly negligent" in managing subordinates who actually caused the constitutional deprivation.

*Candelaria v. Coughlin*, 787 F. Supp. 368, 372 (S.D.N.Y. 1992); *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim"). A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. *Montero v. Travis*, 171 F.3d 757, 761-62 (2d. Cir. 1999); *see Neitzke v. Williams*, 490 U.S. 319, 323 n. 2, 109 S. Ct. 1827, 1830 n. 2, 104 L.Ed.2d 338 (1989).

## ANALYSIS

### *Local Rule 56 Statements of Fact*

Pursuant to the Court's rule, both sets of defendants submitted statements of fact. W.D.N.Y. L.R. 56 (2018).[1] The rule permits the Court to deem admitted any statement of fact that is not opposed by the party opposing summary judgment. Despite having been warned of the need to respond to the motions, and the consequences for not doing so, and despite having been given several extensions of time to do so, McIntosh has failed to oppose any of the statements of fact. Accordingly, the Court will deem admitted the statements made by the parties, which the Court reproduces below.

### *County Defendants Statement of Facts Deemed Admitted*

> 1. Plaintiff was arrested by the Rochester Police Department and brought to the Monroe County Jail on April 10, 2012. Complaint, Docket 1 pages 6-

---

[1] The Corporation Council's Office submitted papers that were not in compliance with the Court's requirement that all documents generated by a word processing program be converted to a .pdf format allowing the .pdf document to be text searched.

5

8.

2. Plaintiff claims that at the Monroe County Jail, Deputy Kenney:

> "violently put handcuffs way to tightly around my wrists" (Docket #1, p. 8);

> "did roll my left hand and push down on my wrist causing extreme pain" (Docket #1, p. 9); and

> That Deputy Kenney tried to break Plaintiff's wrist (Docket #1, p. 9).

3. As to the "big bald jailor", Plaintiff claims that "he pushed down on my neck past my waist while handcuffed and violently pushed forward on the inside of my elbows while handcuffed." Docket #1, p. 9.

4. Plaintiff then claims he was "shoved head first into a 6-inch raised concrete platform in the filthy cell" but does not identify who pushed him.

5. Plaintiff also claims he was "denied proper medical treatment, an attorney, and a phone call".

6. Plaintiff brought this lawsuit on April 10, 2015. See Docket #1.

7. By Decision and Order dated December 14, 2015 (Docket #3), the Court dismissed Plaintiff's claims against, inter alia, "Prosecutors 1-3 who maintained the charge against Plaintiff; Krone; the County of Monroe, New York; Lt. Donovan; Officer Fennessey; 1-25 Monroe County Officers yet unknown; and 1-50 Rochester Police Officers yet unknown." (Docket #3, p. 2).

8. The Court also dismissed Plaintiff's claims of verbal harassment against the three unidentified Monroe County Jail Deputies. (Docket #3, p. 7).

9. The Court found that Plaintiff

> alleged sufficient allegations to proceed against unnamed defendants the "big bald jailer" and the officer with "light brown hair cut really short on the sides" who also had "a brush cut on the top." The Clerk of Court will be directed to list these John Doe defendants in the case caption as "John Doe 1, big bald jailer" and "John Doe 2, officer described as having light brown hair cut really short on the sides who also had a brush cut on the top.

Docket #3, p. 6.

10. The Court further Ordered that the:

> claims may go forward against defendants "John Doe 1, big bald

jailer," and "John Doe 2, officer described as having light brown hair cut really short on the sides who also had a brush cut on the top." Pursuant to Valentin v. Dinkins, 121 F .3d 72 (2d Cir. 1997), the Court requests that the Monroe County Attorney ascertain the full names of the John Doe defendants Plaintiff seeks to sue.

Docket #3, p. 9.

11. Pursuant to the Court Order, the County Attorney's Office sent a correspondence dated January 13, 2016, to the Pro Se Clerk's Office, informing:

> Plaintiff's complaint alleges John Doe 1 was a jailer who used excessive force when handcuffing him, along with "Officer Kenney", on April 10, 2012. Monroe County Sheriff records indicate that Deputy Todd Kenney and Deputy Eric Schultz applied wrist locks to Mr. McIntosh in the Monroe County Jail booking scan room on April 10, 2012. Monroe County and the Monroe County Sheriff deny that excessive force was used.

> Plaintiff's complaint alleges John Doe 2 assaulted him before his court appearance on April 11, 2012. Monroe County and the Monroe County Sheriff deny that the alleged assault occurred. While there is no documented incident, the Monroe County Sheriff's office identified the following individuals as deputies who may have transported Mr. McIntosh to his court appearance: Christopher Carey, Thomas Crandall, Brian Florack, Michael Gropp, Christopher Jiminez, Anthony Latore, and David Munnings.

See Exhibit A.

12. By Decision and Order dated March 8, 2016, the Court found:

> On January 13, 2016, the Monroe County Department of Law, pursuant to the Court's *Valentin* request, provided information about John Doe 1 and John Doe 2. Robert P. Yawman, III, letter to the Court (Jan. 13, 2016), ECF No. 4. That information included names of employees of the Monroe County Sheriff who may have fit the descriptions given by Plaintiff.

Docket #5, p. 1.

13. The Court further found that: "To date, Plaintiff has neither filed an amended complaint as directed, nor has he requested an extension of time to do so." Docket #5, p. 2. The Court therefore:

> ORDERED, that the claims against all Defendants except those named in the Court's Decision and Order of December 15, 2015, ECF No. 3 (outlined above) are dismissed without prejudice; and it is further

7

> ORDERED, that Plaintiff identify the John Doe defendants by name by moving to substitute them in the complaint within 30 days from the date of this Decision and Order

Docket #5, p. 2.

14. Plaintiff never moved to substitute any Defendants.

15. Accordingly, the only County Defendant properly in this case is Deputy Todd Kenny.

16. Despite the March 8, 2016 Decision and Order (docket #5) dismissing all claims against unsubstituted John Doe Defendants, the Clerk issued a summons as to Monroe County Deputy Jailor Eric Schultz (see Docket #17)

17. Out of an abundance of caution, Eric Schultz answered the Complaint (Docket #18).

18. By letter dated December 13, 2016, I requested Plaintiff unseal the criminal records relating to his arrest and jailing.

19. By letter and electronic mail dated February 15, 2017, I again requested Plaintiff agree to unseal the criminal records relating to his arrest and jailing. See Exhibit B.

20. By letter dated May 9, 2017, I again requested Plaintiff agree to unseal the criminal records relating to his arrest and jailing. See Exhibit C.

21. Plaintiff never responded to any correspondence and has not contacted Defendants to engage in any discovery in this action.

County Defendants' Rule 56 Statement of Facts Not in Dispute, Feb. 7, 2018, ECF No. 21-1.

### *City Defendants Rule 56 Statement*

> 1. The incident at issue in this action occurred at just after 4:00 on the afternoon of Tuesday, April 10, 2012 on Mt. Hope Avenue near the intersection with Reservoir Drive in the City of Rochester (Dkt #1, ,i2, p. 6 of 11; Exhibit A—Incident Report; Exhibit B—Prisoner Data Report; and Declarations of Sgt. Reaves, Officer Potocki, former Fire Lt. David Schneggenburger and Firefighter Sean Balantic).

> 2. At approximately 4:00 that afternoon, an SUV being operated by Donald W. Klick northbound on Mt. Hope swerved off the road to the right and struck a utility pole, causing it to fall into Mt. Hope and exposing live electrical wires, then the SUV rolled back onto Mt. Hope (Exhibit C—Police Accident

Report; and Exhibit D—Police scene photos). Mr. Klick was injured and unresponsive and bystanders called 911, whereupon Fire Department first responders were dispatched (Exhibit C; Exhibit E—RFD Records; Exhibit F-"Job Card"; and Schneggenburger and Balantic Declarations).

3. Retired Lt. David Schneggenburger and three firefighters, including Sean Balantic, responded to the 911 call and stopped their firetruck across one of the travel lanes on Mt. Hope (Exhibit A; Exhibit C; and Reaves, Schneggenburger and Balantic Declarations). Lt. Schneggenburger and Firefighter Balantic attended to Mr. Klick at his vehicle while the other two Firefighters addressed fluid leaks from it (Exhibit E; and Balantic Declaration).

4. The accident happened at the beginning of rush hour on a weekday on Mt. Hope, which is quite heavily-travelled at that time, and Officer Reaves (now Sgt.) travelled to the scene in his marked car to control and direct traffic (Exhibit F; and Reaves Declaration).

5. Prior to Sgt. Reaves' arrival, Mr. McIntosh, who had been travelling southbound on Mt. Hope in his vehicle, stopped and went to the SUV where Lt. Schneggenburger and Firefighter Balantic were attending to Mr. Klick (Dkt. #1, ¶2, p. 6 of 11; and Reaves, Schneggenburger and Balantic Declarations). Mr. McIntosh was apparently a stranger to Mr. Klick and initially approached the SUV to offer what assistance he could (Balantic Declaration). Lt. Schneggenburger and Firefighter Balantic politely declined (*Id.*). Undeterred, Mr. McIntosh persisted in interfering and interrupting Lt. Schneggenburger's and Firefighter Balantic's assessment and care of Mr. Klick to the point where he was attempting to direct their care, was insisting that Mr. Klick be taken to the hospital immediately and was threatening to sue if this was not done (Exhibit A; and Reaves, Schneggenburger and Balantic Declarations).

6. Lt. Schneggenburger and Firefighter Balantic were occupied with attempting to attend to Mr. Klick on a busy thoroughfare during rush hour and in contending with traffic, and the other Firefighters were attending to the fluid spills, all of which was being made more dangerous and hazardous by Mr. McIntosh's continued interference (Exhibit A; and Reaves, Schneggenburger and Balantic Declarations). Lt. Schneggenburger thus asked Sgt. Reaves to move him away from the SUV and out of the accident scene (*Id.*).

7. Despite Sgt. Reaves' continued directives to Mr. McInotsh [sic] to leave the accident scene and to move his vehicle out of the accident perimeter, and his repeated escorting of Mr. McIntosh back to his vehicle to have him move it, Mr. McIntosh protested, used vulgar expletives and engaged in name-calling of Sgt. Reaves, and delayed his exit from the scene (Exhibit A; and Reaves and Balantic Declarations). When Sgt. Reaves finally was able to coax Mr. McIntosh back into his vehicle, Mr. McIntosh produced a video camera and began recording his interaction with the Sergeant (Dkt

9

#1, p. 4, "B. SECOND CLAIM"; Exhibit A; and Reaves Declaration). Mr. McIntosh advised that as soon as an ambulance arrived to attend to Mr. Klick, he intended to speak with the EMTs, apparently to direct their care (Exhibit A; and Reaves Declaration), and Sgt. Reaves warned him against doing so, again directing him to move his vehicle out of the accident perimeter and not to intrude again (*Id.*).

8. When a Rural Metro ambulance arrived, Mr. McIntosh exited his vehicle, notwithstanding Sgt. Reaves' directive, and pushed past the Sgt. to make his way to the EMTs (Exhibit A; and Reaves Declaration). Sgt. Reaves again escorted him back to his vehicle and directed him to remove it from the scene and to remain outside of the perimeter (*Id.*). At that point, Mr. McIntosh got back into his vehicle, again videotaped Sgt. Reaves, and called him a vulgar expletive, whereupon Sgt. Reaves directed him to get out of his vehicle and arrested him (*Id.*).

9. Sgt. Reaves' occupation with Mr. McIntosh during these exchanges prevented him from addressing traffic control, which was the reason he came to the accident scene, and it also prevented him from attempting to help control the scene and to protect the firemen/first responders safety, as well as Mr. Klick's (Exhibit A; and Reaves Declaration). He arrested Mr. McIntosh for obstruction of governmental administration and disorderly conduct, handcuffed him once he was out of his vehicle, and then escorted Mr. McIntosh to his marked police car and placed him in the backseat to await transport from the scene for booking [*Id.*]. Mr. McIntosh did not resist the arrest and Sgt. Reaves used only the minimal force necessary to actually place handcuffs on his wrists and to escort him from his vehicle to the marked police car (Reaves Declaration). Mr. McIntosh was not injured in any respect, he made no complaints about the handcuffs, nor most significantly, did he request medical attention, though there were EMTs at the scene (*Id.*).

10. Several minutes after Mr. McIntosh was placed in the back of Sgt. Reaves' car, Officer Potocki arrived in his own marked police car to transport Mr. McIntosh to the Public Safety Building for booking (Exhibit A; Exhibit B; and Reaves and Potocki Declarations). Officer Potocki moved Mr. McIntosh from the back of Officer Reaves' car to the back of his own marked car and Mr. McIntosh did not resist that at all (Potocki Declaration). So, Officer Potocki used no force at all during this exchange, nor it is alleged that he did (*Id.*; and Dkt #1, ¶2, p. 7 of 11).

11. Officer Potocki was required to prepare documents to effect Mr. McIntosh's transfer to Monroe County Sheriff's Deputies at the booking office (Reaves and Potocki Declarations). These included a Prisoner Data Report, which he prepared on the data terminal in his car (Exhibit B; and Potocki Declaration). This took several minutes, during which Sgt. Reaves arranged to have tow trucks come to the scene to remove Mr. Klick's SUV and Mr.

McIntosh's vehicle (Exhibit A; and Reaves and Potocki Declarations). Another Police Officer, Jennifer Link, came to the scene to facilitate the towing of the vehicles and noticed that Mr. McIntosh had manufactured an inspection certificate, which he apparently copied on Kodak paper, and scotched [sic] taped it to his windshield (Exhibits A and B; Exhibit G—Police photos; and Reaves and Potocki Declarations). So, charges of a falsified inspection certificate and an uninspected vehicle were added to the obstruction of governmental administration and disorderly conduct charges (*Id.*).

12. Upon completing the required paperwork, Officer Potocki transported Mr. McIntosh to the booking office at the Public Safety Building and transferred his custody to the Sheriff's Deputies there (Potocki Declaration). Upon transfer, booking photographs (mugshots) were taken of Mr. McIntosh, and one of the Deputies conducted a medical screening (Potocki Declaration; Exhibit H—Booking Photos; and Exhibit I—Medical Receiving Screening Form and Booking Officer's Visual Opinion Form).

13. The video camera Mr. McIntosh used to record part of his interaction with Sgt. Reaves was turned into evidence by the Sergeant (Exhibit A; and Reaves Declaration). It was returned to Mr. McIntosh upon the resolution of his criminal matter (Dkt #1, ¶2, p. 8 of 11 ). At the time of the Rule 16 Conference held in this case in September 2016, Mr. McIntosh was directed to preserve the footage and to provide copies to defense counsel, but he has failed to do so.

14. At the Rule 16 Conference, Mr. McIntosh was also asked to preserve videotape he took of New York City Police Officers on or about September 23, 2009, which resulted in his arrest and for which he commenced a federal civil lawsuit against the City of New York and several of the Officers (Exhibit J—Summons and Complaint; and Exhibit K—Settlement Documents). Mr. McIntosh's videotaping of his interaction with Sgt. Reaves was not the first time that he has used his video camera to record Police, nor the first occasion on which he has commenced suit, though he rather curiously omits any reference to this in his Complaint in this action, despite claiming that the actions of the Police Officers here were taken in retaliation for videotaping them (Dkt #1, p. 4, "B. SECOND CLAIM", and ¶2, pp. 6 and 7 of 11).

15. At the time he commenced this suit, Mr. McIntosh also moved for leave to proceed in forma pauperis (Dkt #2). This Court (Hon. Charles J. Siragusa, USDCJ) granted that relief in a Decision and Order, dated December 12, 2015 (Dkt #3). That Decision and Order eliminated all of the named Defendants except for Sgt. Reaves, Officer Potocki, and two or three Sheriff's Deputies, described only tonsorially by Mr. McIntosh, and eliminated all but his excessive force use claim as against them (*Id.*). It also afforded him the opportunity to file and serve an Amended Complaint including a false arrest claim, provided that he included requisite details and that he do so within 30 days of that Decision and Order (*Id.*). He failed to do so, which resulted

in this Court's Decision and Order dated March 8, 2016, which relegated him to proceeding on his original Complaint, but only with regard to excessive force use on the part of the aforesaid four or five Defendants (Dkt #5).

16. As the result of the foregoing, and by operation of the Decisions and Orders, Mr. McIntosh's claims against Sgt. Reaves and Officer Potocki are those contained on page 7 of 11 of his filed Complaint (Dkt #1 ). He seeks monetary relief, including recovery of attorney's fees, which is puzzling, given that he is proceeding *pro se*, he is not a lawyer, and he was granted poor persons status.

17. Whatever the circumstances may have been on the afternoon of September 23, 2009 in Manhattan when Mr. McIntosh videotaped New York City Police Officers involved in some event, he had no business involving himself in the scene of the subject single-accident with injuries, with which the firemen/first responders and Sgt. Reaves were involved. Mr. McIntosh was a stranger to Mr. Klick and his persistent interruptions and interference with the care being rendered to him was distracting to Lt. Schneggenburger and Firefighter Balantic and threatened their safety, as well as Mr. Klick's. Mr. McIntosh's re-intrusion into the scene after Sgt. Reaves had ushered him away and his intent to speak to the EMTs when they arrived, in direct contravention of Sgt. Reaves' lawful order, provided clear probable cause and ample justification for the arrest and Mr. McIntosh makes no claim to the contrary in his Complaint.

19. Mr. McIntosh did not resist Sgt. Reaves' arrest, so no force was used to effect it and to handcuff him. Significantly, Mr. McIntosh did not request medical attention as the result of any alleges injury, he identifies no specific injury he sustained as the result of the arrest, and all that he alleged in the Complaint is that he had momentary pain prior to being placed into the backseat of Sgt. Reaves' car.

20. Mr. McIntosh's claim of excessive force use by Officer Potocki is that while he was handcuffed in the backseat of Officer Potocki's car awaiting transport for booking, Officer Potocki punched him in the mouth (Dkt #1, p. 7 of 11 ). Mr. McIntosh does not identify any specific injury he sustained as the result of this alleged punching, nor does he claim that he required, requested or sought medical attention. He was photographed upon his transfer at the booking office approximately 10 to 15 minutes after this, and those photographs show that he was uninjured (Exhibit H—Booking Photos). Further, when the Sheriff's Deputy conducted the medical screening, it was noted the Mr. McIntosh was uninjured and there was no mention of him requesting medical attention (Exhibit I).

21. At the Rule 16 Conference, Mr. McIntosh was asked to identify any health care providers who treated him and to provide Authorizations permitting the Defendants to acquire copies of their records. He failed to do either

and it appears that he was not seen or treated by anyone.

22. At the Rule 16 Conference, Mr. McIntosh was also asked to locate and provide copies of photographs taken of his hands and wrists at about the time of the subject incident. He commenced a lawsuit against a local dermatology practice and two of its physician-members for alleged malpractice with regard to treatment of a rash on his hands and feet. The rash on his feet was successfully treated, but the rash on his hands lingered and were treated by a New York City-based physician, who took photographs. They showed an oatmeal-like appearance of his palms. He was also seen by another physician in the New York City area, whom he requested serve as an expert to oppose a summary judgment motion made in the malpractice suit. Upon information and belief, both physicians maintained records regarding their evaluation and/or care of him and he was asked at the Rule 16 Conference to produce copies of those, as well. Had he sustained any injuries to his wrists or lower arms as the result of the events at the accident scene on Mt. Hope, it is submitted that those photographs would have shown them. Ultimately, Monroe County Supreme Court Justice, William Polito, dismissed that suit, his decision was upheld on appeal (see McIntosh v Genesee Valley Laser Center, 121 AD3d 1560 [4th Dept. , 2014]) and his motions for reargument and or for leave to appeal to the New York Court of Appeals were denied (McIntosh v Genesee Valley Laser Center, 125 AD3d 1460 [4th Dept., 2015); and McIntosh v Genesee Valley Laser Center, 25 NY3d 911 [2015]). Mr. McIntosh has did [sic] not produce photos or records.

City Rule 56 Statement, Feb. 7, 2018, ECF No. 22-6.

### *County Defendants*

The County defendants contend that McIntosh has failed to allege facts stating a claim for an Eighth Amendment violation, has presented no evidence that the force used against him was sufficiently serious or that he suffered a serious medical need, and that the Court should dismiss his claims against the County defendants because McIntosh has failed to prosecute this action. Further, they argue that McIntosh never moved to substitute Deputy Eric Schultz (whom the County identified for him) for "John Doe 1, big bald jailor," therefore, Deputy Schultz is not a proper defendant.

The County memorandum of law submits that the Court should analyze McIntosh's claims of excessive force applied to him while he was at the jail following arrest, but before

any conviction, under the Eighth Amendment. The Court disagrees. Under *Graham v. Connor*, 490 U.S. 386 (1989), the Court analyzes the claims "under the Fourth Amendment's 'objective reasonableness' standard…." *Id.* at 388, 395 ("*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard…."). The Supreme Court further stated that the reasonableness of the force used to make the arrest depends on the circumstances, such as the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, or is actively resisting arrest, and that the standard is viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Then-Chief Justice Rehnquist further observed:

> With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Graham*, 490 U.S. at 396–97.

### *Deputy Todd Kenney*

The County correctly posits that Deputy Todd Kenney is the only County defendant left in this case and argues that his use of force was objectively reasonable. In its statement of facts, the County does not dispute the allegations McIntosh made in his sworn

14

complaint, including that Deputy Kenney "violently screamed commands that [McIntosh] was already obeying and violently put handcuffs way to[o] tightly around [his] wrists." Compl. at 8, Apr. 10, 2015, ECF No. 1. McIntosh also stated that Deputy Kenney "did roll [his] left hand and push on [his] wrist causing extreme pain" and tried to break his left wrist. *Id.* Finally, McIntosh stated: "Then I was shoved head first into a 6-inch raised concrete platform in the filthy cell." *Id.* McIntosh does not identify *who* shoved him into the platform.

Violently screaming commands does not amount to an unlawful use of force. Assuming for the sake of the motions that Defendants had probable cause to arrest McIntosh, placing handcuffs on too tightly only amounts to an unlawful use of force if McIntosh also alleges that he so informed the deputy, and the deputy refused to correct the problem. *See Burchett v. Kiefer*, 310 F.3d 937, 944–45 (6th Cir. 2002) ("Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight."); *Hamilton v. Fischer*, No. 6:12-CV-06449(MAT), 2015 WL 8207459, at *2 (W.D.N.Y. Dec. 7, 2015) (citing *Burchett*). Plaintiff does not state in his verified complaint that he informed Deputy Kenney the handcuffs were too tight, or that Deputy Kenney refused to loosen them Thus, those two allegations are insufficient to state a cause of action for unlawful use of force under the Fourth Amendment.

The Court turns now to McIntosh's statements that "Officer Kenney did roll my left hand and push on my wrist causing extreme pain. While I was screaming in pain and agony, Officer Kenny did try with all his might to break my left wrist." Compl. at 9. Without any evidentiary proof in admissible form from Deputy Kenney or any other witness refuting

McIntosh's claims against him, the Court is unable to grant judgment to Deputy Kenney. Therefore, his motion for judgment is denied with respect to the allegations that Deputy Kenney tried to break McIntosh's wrist.

### *Deputy Eric Schultz*

Plaintiff referred to this defendant as big, bald, and a jailor. In its Order of March 8, 2016, ECF No. 5, the Court ordered McIntosh to substitute the jailor's name as a party based on the information provided by the Monroe County Department of Law pursuant to the Court's *Valentin* request. *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). McIntosh never substituted a name for the John Doe defendant the Law Department identified. Accordingly, any claims against Deputy Schultz are dismissed.

### *Medical Claims*

McIntosh alleges he "was denied proper medical treatment, an attorney, and a phone call." Compl. at 9. This conclusory claim fails to meet the lesser standard required for surviving a motion to dismiss, let alone the standard for a summary judgment motion. This claim is dismissed.

### *City Defendant Sergeant Bing C. Reaves*

McIntosh alleges claims of false arrest and false imprisonment against Rochester City Police Sergeant Reaves. Based on the undisputed facts outlined above, Sergeant Reaves had probable cause to arrest McIntosh. Further, the force alleged in the complaint, if true, was not unreasonable under the circumstances of the situation.

### *City Defendant Officer Mathew Potocki*

McIntosh alleges that Officer Potocki punched him in the mouth, and the officer denies ever striking, or threatening to strike McIntosh. Attached to his declaration is a photograph of Plaintiff's face taken shortly after his arrest. The photographs depict no

injury to McIntosh's face. Consequently, McIntosh has failed to raise a material question of fact precluding summary judgment. His claim against Officer Potocki is dismissed.

## CONCLUSION

For the reasons stated above, the Monroe County Defendants' application for summary judgment, ECF No. 21, is granted in part. All claims against Deputy Schultz, named in the complaint as John Doe 1 "big, bald jailor," are dismissed. All claims against Deputy Kenney, with the exception of the claim that the deputy tried to break McIntosh's wrist, are also dismissed. The Clerk will enter a partial judgment for Defendants as outlined above. The case remains open.

Further, the City Defendants' motion for summary judgment, ECF No. 22, is granted in total. All claims against the City Defendants are dismissed.

The Court will schedule a status conference by separate Order.

DATED: November 7, 2019
Rochester, New York

<u>/s/ Charles J. Siragusa</u>
CHARLES J. SIRAGUSA
United States District Judge